**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

IN RE:

EX PARTE APPLICATION OF
IRAQ TELECOM LIMITED FOR AN
ORDER TO OBTAIN DISCOVERY FOR
USE IN A FOREIGN PROCEEDING
PURSUANT TO 28 U.S.C. §1782

Case No. _____

**MEMORANDUM OF LAW IN SUPPORT OF IRAQ TELECOM LIMITED'S *EX PARTE*
APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER TO TAKE
DISCOVERY FROM LIME ROCK PARTNERS FOR USE IN A FOREIGN
PROCEEDING**

# <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

INTRODUCTION AND SUMMARY STATEMENT ..................................................................1

FACTUAL BASIS FOR APPLICATION.............................................................................2

I.      The Award ...........................................................................................................2

II.     Key OilServ Entities ............................................................................................4

III.    Lime Rock's Investments in OilServ ...................................................................5

IV.     Mr. Barzani's Use of Messrs. Baba Sheik and D Shani .....................................6

        A.      Mr. Baba Sheikh's Role ...........................................................................6

        B.      Mr. D Shani's Role ...................................................................................7

THE BVI PROCEEDING.................................................................................................7

REQUESTED DISCOVERY ............................................................................................8

ARGUMENT ..................................................................................................................9

I.      Granting Iraq Telecom's Application *Ex Parte* is Appropriate and Fair under
        Section 1782.......................................................................................................10

II.     Iraq Telecom's Application Meets the Statutory Requirements of Section 1782 ...........10

        A.      Lime Rock "Resides" or is "Found" in this District ...............................11

        B.      The Requested Discovery is "For Use" in a "Foreign Proceeding" ........12

                1.      The BVI Proceeding is a Foreign Proceeding...............................12

                2.      The Requested Discovery is "For Use" in a Foreign Proceeding ...........13

        C.      Iraq Telecom is an "Interested Person" ..................................................13

III.    The Discretionary Factors Weigh in Favor of Iraq Telecom's Application ......13

        A.      Lime Rock is not a Participant in the BVI Proceeding ...........................14

        B.      The BVI Courts are Receptive to Judicial Assistance ............................14

        C.      The Application Does Not Circumvent the Rules of the BVI Courts.......15

        D.      The Application is Narrowly Tailored to Avoid Unnecessary Burdens in
                Accordance with the Federal Rules Of Civil Procedure .........................15

IV.     CONCLUSION.................................................................................................16

**<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

<u>Cases</u>

*Eni Ghana Expl. & Prod. Ltd v. Gaffney Cline & Associates, Inc*,
  4:22-MC-01285, 2022 WL 3156224 (S.D. Tex. Aug. 8, 2022) .......................................10, 11

*In re Application of Lake Holding and Finance S.A.*,
  No 20-mc-62, 2021 WL 2581427 (S.D.N.Y. June 23, 2021) ...................................................12

*In re Attorney General of British Virgin Islands*,
  No. 1:21-mc-00768, 2021 WL 5361073 (S.D.N.Y. Oct. 29, 2021) .................................12, 14

*In re Borrelli*,
  No. 20-mc-80154-JSC, 2020 WL 5642484 (N.D. Cal. Sept. 22, 2020)..................................14

*In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v.
  WorleyParsons Int'l, Inc.*,
  4:19-MC-2534, 2020 WL 13412872 (S.D. Tex. Apr. 13, 2020) .............................................14

*In re Ming Yang*,
  No. 19-mc-80207, 2019 WL 4054027 (N.D. Cal. Aug. 28, 2019) .............................12, 14, 15

*In re NJSC Naftogaz of Ukraine*,
  3-18-MC-92-L-BK, 2019 WL 13203773 (N.D. Tex. Sept. 30, 2019)....................................12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)....................................................................................2, 10, 13, 14, 15

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015)....................................................................................................11

*Shueisha Inc. v. Paypal Holdings, Inc.*,
  No. 22-MC-80273-JSC, 2023 WL 2277102 (N.D. Cal. Feb. 27, 2023)..................................11

*Texas Keystone, Inc. v. Prime Nat. Res., Inc.*,
  694 F.3d 548 (5th Cir. 2012) ..................................................................................................15

*Weber v. Finker*,
  554 F.3d 1379 (11th Cir. 2009) ..............................................................................................15

## Statutes

28 U.S.C. § 1782...............................................................1, 2, 3, 9, 10, 11, 12, 13, 14, 15

## Other Authorities

Lime Rock, Form ADV,
  https://reports.adviserinfo.sec.gov/reports/ADV/157127/PDF/157127.pdf ...........................11

Lime Rock Partners, LinkedIn, https://www.linkedin.com/company/lime-rock-
  partners...................................................................................................................................11

## INTRODUCTION AND SUMMARY STATEMENT

In March 2023, the International Chamber of Commerce issued a $1.65 billion award ("**Award**") in favor of Iraq Telecom Limited ("**Iraq Telecom**" or the "**Applicant**") in respect of a massive, corrupt scheme to defraud Iraq Telecom by, among other things, bribing Iraqi government officials.  Iraq Telecom respectfully seeks this Court's assistance in gathering evidence to track down assets of the central perpetrator of the fraud—its former business partner, Sirwan Saber Mustafa Barzani ("**Mr. Barzani**")— in order to enforce the Award.  Specifically, Iraq Telecom files this *ex parte* application (the "**Application**") for judicial assistance pursuant to 28 U.S.C. § 1782 ("**Section 1782**") authorizing Iraq Telecom to take discovery from Lime Rock Partners ("**Lime Rock**"), ("**Requested Discovery**") for use in an enforcement proceeding in the British Virgin Islands ("**BVI**"), (the "**BVI Proceeding**").

In order to enforce the Award in the BVI Proceeding, Iraq Telecom must have awareness of the identity of assets (including shares) held by Mr. Barzani in the BVI, and present such evidence to the BVI court.  As relevant to the Application, evidence collected to date strongly suggests that Mr. Barzani (likely via a nominee, as explained below) has an ownership interest in OilServ, a group of companies (with the holding company incorporated in the BVI) providing oilfield services to operators in the Middle East and Africa.  Lime Rock is a private equity fund that has invested in OilServ, and as such, has access to documents and information relating to OilServ's ownership.  Through its proposed subpoenas for documents and testimony (*see* Declaration of Kristin N. Tahler ("**Tahler Decl.**"), annexed hereto as Appendix A, at Exhibits 2–3), Iraq Telecom seeks the Requested Discovery— specific and discrete information and documents from Lime Rock relating to Lime Rock's investment in OilServ, OilServ's shareholder records, the role of each shareholder in the company, and the valuation of OilServ's shares for use in the BVI Proceedings.

Per the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), in determining whether to grant an application under Section 1782, this Court must consider both statutory *and* discretionary factors. Iraq Telecom amply meets each of the statutory factors, and the discretionary factors weigh in favor of granting the Application.

<u>**FACTUAL BASIS FOR APPLICATION**</u>

## I.    The Award

The facts underlying this Application have been extensively litigated and will not be repeated in detail herein. In brief, in 2011, Iraq Telecom invested over USD 800 million in Korek Telecom Company LLC ("**Korek**"), an Iraqi telecommunications company at the behest of Korek's shareholders: Mr. Barzani, Jawshin Hassan Jawshin Barazany, and Jiqsy Hamo Mustafa (together the "**Iraqi Shareholders**"). As a result of Iraq Telecom's investment, Korek thrived, but Mr. Barzani and his co-conspirators had decided to take back control and full value of Korek. Mr. Barzani was aware that by doing so he would unlawfully deprive Iraq Telecom of its significant financial investment. Tahler Decl. ¶ 7.

As set forth in the Award, to accomplish this, Mr. Barzani engaged in bribery, corrupt actions, and fraudulent misdeeds too extensive and numerous to detail, including bribing certain Iraqi regulatory officials to take actions against Korek that would harm its interests at the time when Iraq Telecom was contractually entitled to take majority control of the company by virtue of the structure of its initial investment. Nonetheless, Iraq Telecom declared its intention to obtain majority control of the company. The Iraqi officials, at Mr. Barzani's behest, subsequently demanded USD 43 million in fines due to Iraq Telecom's supposed foreign ownership, and purported to render the investment null and void by ordering Korek to reinstate the ownership status to the position it was in prior to Iraq Telecom's investment. *Id*. at ¶ 8.

Iraq Telecom took legal action against Korek and its shareholders to protect its investment. In connection with Iraq Telecom's efforts, Raedas Consulting Limited ("**Raedas**"), a London-based international private investigations firm, was engaged to conduct an investigation. *See* Declaration of Nicholas Bortman ("**Raedas Decl.**"), annexed hereto as Appendix B, at ¶ 2. Raedas obtained significant evidence that the Iraqi Shareholders bribed Iraqi officials. Iraq Telecom subsequently initiated an International Chamber of Commerce arbitration (the "**ICC Arbitration**" or the "**Tribunal**") against the Iraqi Shareholders. Tahler Decl. ¶ 9.

In support of the ICC Arbitration, Iraq Telecom successfully obtained critical evidence through a Section 1782 proceeding in the Eastern District of Pennsylvania ("**EDPA Proceeding**"). *Id*. at ¶ 10. Among other things, this evidence demonstrated that Mr. Barzani used a number of deputies or nominees in order to effectuate his fraudulent scheme. Tahler Decl. ¶ 11. For example, Mr. Barzani utilized at least two nominees – i.e., individuals other than himself – to purchase real estate properties. *See id*.

Relying in part on the evidence produced through the EDPA Proceeding, the Tribunal rendered the Award in favor of Iraq Telecom on March 20, 2023. *See* Tahler Decl. at Ex. 1. The Tribunal determined that Mr. Barzani and his co-respondents are responsible for damages, attorneys' fees, costs, and interest of over $1.65 billion to Iraq Telecom. *See id*. None of this amount has been paid to date. Tahler Decl. ¶ 13. Quite to the contrary, evidence compels the conclusion that Mr. Barzani and Korek have engaged and are continuing to engage in a concerted effort to evade enforcement, conceal and dissipate assets, and avoid any due and owing payment whatsoever. As part of Iraq Telecom's efforts to enforce the Award in this particularly challenging circumstance, Iraq Telecom has initiated several enforcement proceedings throughout the world,

including the BVI Proceeding and a proceeding in the Eastern District of Pennsylvania. *See id.* at ¶ 14.

## II.    Key OilServ Entities

This Application concerns OilServ Holding Ltd. ("**OilServ Holding**"), which was incorporated in the BVI on September 15, 2008, as a holding company for OilServ Company for Oilfield Services ("**OilServ Iraq**").

OilServ Iraq was incorporated in the Kurdistan Region of Northern Iraq on December 17, 2006. Raedas Decl. at ¶ 8. Amjad Saidgul Baba Sheikh Barzanji ("**Mr. Baba Sheikh**") was the public face of the OilServ entities at establishment and has continued in that role up to today. *Id.* He also at one time served as a shareholder and managing director of OilServ Iraq. *Id.* An Erbil Chamber of Commerce record with a registration date of March 1, 2007, shows that Mr. Barzani and Mr. Baba Sheikh were sole shareholders of OilServ Iraq; no stated split in shareholding percentages was provided. *Id.*

Another OilServ entity, OilServ FZCO, was incorporated in the Jebel Ali Free Zone in the UAE on November 14, 2006, less than one month prior to OilServ Iraq. OilServ FZCO share certificates reflect that shares were split equally between Mr. Baba Sheikh and Mr. Barzani. *See id.* at ¶ 9.

Similarly, at OilServ Holding's incorporation in 2008, shares were divided equally between Mr. Barzani and Mr. Baba Sheikh, who was also named as legal representative. *See id.* at ¶ 10.

Mr. Barzani resigned his directorship of OilServ Holding on March 5, 2010. Ten days later, on March 15, 2010, Mr. Barzani purportedly transferred his entire shareholding in OilServ Holding to Dhekra Basheer Shani ("**Mr. D Shani**"). *See id.* at ¶ 11.

On April 19, 2010, shortly before Lime Rock's investment in OilServ, a company called OS International Holding Ltd ("**OS International**") was incorporated in the BVI as a holding

4

vehicle for the original shareholders' interests in Oilserv Holding (i.e., the shareholder interests of Mr. Baba Sheikh and Mr. D Shani, the recipient of Mr. Barzani's shares roughly one month prior). *Id*. at ¶ 12.  On May 28, 2010, Mr. Baba Sheikh and Mr. D. Shani transferred all class A shares of OilServ Holding to OS International.[1]  *Id.*  Mr. Baba Sheikh is the sole director of OS International today.  *Id.*  Mr. Baba Sheikh and Mr. D Shani today hold 43.6% and 56.4% respectively of the registered shares in OS International.  *Id.*  Mr. Baba Sheikh also owns 4.75% of OilServ Holding. Between Mr. Baba Sheikh and Mr. D Shani (directly and indirectly), they hold just over 70% of OilServ Holding.  *See id*. at ¶ 13.

## III.    Lime Rock's Investments in OilServ

On May 28, 2010, Lime Rock acquired 65,000,000 class B shares and 1 class C share in OilServ Holding.  *See id*. at ¶ 14.   On May 26, 2011, Lime Rock purchased an additional 40,000,000 class B shares of OilServ Holding, which brought its total holding of class B shares also to 105,000,000.  *See id*. at ¶ 15.

According to a capital market data aggregator, this was a developmental investment and not a buy-out of the existing shareholders.  *See id*. at ¶ 16.  Mr. Baba Sheikh and Mr. D Shani remained shareholders following the purchases.  *See id*.

The articles of incorporation for OilServ Holding indicate that the target sale price for all OilServ Holding's shares or assets was between USD 245 and USD 350 million.  *See id*. at ¶ 17. According to a register of members disclosed by OilServ Holding, Lime Rock still holds its shares in OilServ Holding at this time.  *See id*. at ¶ 18.

---

[1]     On December 20, 2013, Mr. Baba Sheikh was subsequently allotted an additional 35,000,000 class A shares in OilServ Holding.  *See id*. at ¶ 13.

## IV.    Mr. Barzani's Use of Messrs. Baba Sheikh and D Shani

Evidence collected by Raedas demonstrates that Mr. Baba Sheikh is running the day-to-day business of OilServ Holding and Mr. Barzani is using Mr. D Shani as a nominee to hold his interest in OilServ Holding. *See id*. at ¶ 20.  In July 2022, a source confirmed to Raedas that Mr. Barzani is simply acting as a silent partner (or rather, "silent owner") with respect to OilServ Holding. *See id*. at ¶ 21.  The silent partner role of Mr. Barzani is further confirmed by two public articles. *See id*. at ¶ 22.

Indeed, Mr. Barzani's use of nominees and associates to effectuate his schemes, including by holding equity on his behalf, is not uncommon. *See id*. at ¶ 23; Tahler Decl. at ¶ 11.  It would therefore be consistent with Mr. Barzani's practice to act as a silent partner (or rather, "silent owner") in OilServ while Mr. D Shani is a nominee shareholder on his behalf and Mr. Baba Sheikh runs the day-to-day of the business. *See* Raedas Decl. at ¶ 23.  Background on Messrs. Baba Sheikh and D Shani further evidences their supporting roles in connection with OilServ. *See id*. at ¶ 24.

### A.    Mr. Baba Sheikh's Role

Per the BVI public register, as of June 2023, Mr. Baba Sheikh (and not Mr. Barzani) is listed as a director of both OilServ Holding and OS International. *See id*. at ¶ 25.  As set forth above, Mr. Barzani and Mr. Baba Sheikh were original shareholders of the OilServ entities. *See id*. at ¶ 26.  Mr. Baba Sheikh has qualifications relating to oilfield management, which explains why Mr. Barzani likely enabled him to run the day-to-day business with OilServ. *See id*. at ¶ 27.  Further, SWIFT payment records show that Mr. Baba Sheikh made payments to OS International, indicating his current role in managing the day-to-day of the business. *See id*. at ¶ 28.

**B.    Mr. D Shani's Role**

As detailed above, on March 15, 2010, Mr. Barzani transferred his entire shareholding in OilServ Holding to Mr. D Shani.  *See id.* at ¶ 29.  Unlike Mr. Baba Sheikh, Mr. D Shani has no known relevant experience in the oil and gas industry, let alone any that approach justifying his professional involvement at a senior level in OilServ.  *See id.* at ¶ 30.  Also, he does not have the independent wealth or financial means to purchase a 50% stake in a major international oilfield services company from Mr. Barzani for millions of dollars.[2]  *See id.* at ¶ 31.

Further evidencing Mr. D Shani's ties to Mr. Barzani is his role as a shareholder of Darin Group in Iraq, an Iraqi construction and general contracting group with headquarters in Erbil.  *See id.* at ¶ 32.  Mr. Barzani has an ownership interest in Darin Group, which he has used to effectuate various schemes to the detriment of Iraq Telecom.[3]  *Id.*

## THE BVI PROCEEDING

Iraq Telecom engaged BVI law firm Harneys to seek enforcement of the Award.  *See* Declaration of Claire Goldstein ("**Goldstein Decl.**"), annexed hereto as Appendix C, at ¶ 10.  Harneys initiated a proceeding before the Commercial Court of the BVI.  *See id.* at ¶ 2.  Subsequently, Harneys obtained a freezing injunction against Mr. Barzani on the basis that he is suspected of owning shares in the BVI, which include a beneficial interest in OilServ Holding and OS International.  By an order dated May 30, 2023, the BVI Commercial Court granted permission

---

[2]  Indeed, the lack of independent financial means is a hallmark of Mr. Barzani's nominees. As was discovered through evidence produced in the EDPA Proceeding, one of Mr. Barzani's nominee purchasers of London real estate had never had in excess of five figures in his bank account, yet he was able to purchase a property worth over USD 1 million in cash.  The evidence revealed this individual had been a nominee purchaser, acting at Mr. Barzani's behest.  Tahler Decl. ¶ 12.

[3]  This is another hallmark of Mr. Barzani's nominees: They often are used in several capacities and companies with ties to Mr. Barzani.  Indeed, one of the nominee purchasers of London real estate had acted as a nominee in several capacities.  Tahler Decl. ¶ 13.

to Iraq Telecom to register and enforce the Award in the BVI.  Iraq Telecom is now seeking to enforce the Award against Mr. Barzani in the BVI.  *See id.* at ¶ 12.

Once the order for registration and permission to enforce is entered, which means that any foreign judgment or award can be enforced in the BVI in the same way as a domestic judgment, the next step in the BVI Proceeding will be for Iraq Telecom to seek a provisional charging order ("**PCO**") and then a charging order (*i.e.*, orders which place a charge over the shares of the debtor in favor of the creditor, initially on a provisional and then on a final basis).  Ultimately, Iraq Telecom will seek an order for sale over the shares that Mr. Barzani holds in BVI companies (*i.e.*, the order that ultimately allows the creditor to sell the shares or otherwise deal with them in order to realize value so that the debt can be discharged).  *See id.* at ¶ 13.

In order for the BVI Commercial Court to issue the PCO and charging order, however, Iraq Telecom must collect and present additional evidence as to Mr. Barzani's ownership interests in OilServ Holding and OS International.  Specifically, Iraq Telecom must identify the shares against which it seeks these orders and will need to provide sufficient evidence to establish, on the balance of probabilities, that the shares are indeed held on Mr. Barzani's behalf, how many such shares are held and by whom.  This evidence must satisfy the BVI Commercial Court that the PCO and charging order, if granted, will correctly seize upon any asset that is truly owned by Mr. Barzani. Mr. Barzani's ownership of an interest in OilServ Holding and OS International is therefore a factual issue that the BVI Commercial Court will need to determine.

## **REQUESTED DISCOVERY**

The Requested Discovery includes documents and information possessed, controlled and/or accessible by Lime Rock relating to its investment(s) in OilServ.  The Requested Discovery includes, but is not limited to (i) documents regarding OilServ's current and historical corporate, shareholder, and partnership structure; (ii) documents regarding OilServ's current and historical

ownership (both beneficial and legal ownership), including but not limited to the names of the shareholders, the amount of their holdings in the company and shares of the company held by each shareholder; (iii) documents and communications evidencing the role and activity of Messrs. Barzani, D Shani and Baba Sheikh as OilServ shareholders, including but not limited to, board meeting records, shareholder correspondence, dividend correspondence; (iv) any and all nonprivileged due diligence materials (such as e-mails, documents, analyses, data, etc.) of OilServ and its partners conducted prior to Lime Rock's investment(s); (v) documents and communications that demonstrate with whom Lime Rock negotiated its investments; (vi) any valuation of shares in OilServ; and (vii) a corporate deposition of the person most knowledgeable at Lime Rock on its investment(s) into OilServ and Lime Rock's diligence of OilServ prior to, and throughout, its investment(s).

The Requested Discovery will likely show, among other things, that Mr. Barzani either held, or currently holds, shares in OilServ and the amount that such shares are worth. If the shares are no longer directly held by Mr. Barzani, the evidence will confirm who his nominee is and may also uncover the basis of that transfer itself. Such evidence will support Iraq Telecom's claim in the BVI that it is entitled to enforce the Arbitration Award against Mr. Barzani's interest in OilServ and take ownership of that interest.

## **ARGUMENT**

Iraq Telecom respectfully submits that this Court should grant the Application because (1) it meets the statutory requirements set forth in Section 1782 (*i.e.*, the person from whom discovery is sought resides in the district in which the application is made, the request seeks testimony, information and the production of documents, the discovery is for use in proceedings before a foreign tribunal and the applicant is an "interested person"); and (2) weighing the discretionary factors established by controlling case law compels such result (*i.e.*, (a) the target of discovery is

not a participant in the foreign proceedings; (b) the foreign tribunals are receptive to the use of the

Requested Discovery; (c) the request is not an attempt to circumvent foreign law; and (d) the

request is narrowly tailored and limited in scope). Indeed, granting the Application will serve

Section 1782's "twin aims of providing efficient assistance to participants in international

litigation and encouraging foreign countries by example to provide similar assistance to [U.S.]

courts." *Intel*, 542 U.S. at 252 (internal quotations and citation omitted).

## I.      Granting Iraq Telecom's Application *Ex Parte* is Appropriate and Fair under Section 1782

It is procedurally appropriate for this Court to entertain this *ex parte* application pursuant

to Section 1782. *See Eni Ghana Expl. & Prod. Ltd v. Gaffney Cline & Associates, Inc*, 4:22-MC-

01285, 2022 WL 3156224, at *3 (S.D. Tex. Aug. 8, 2022) ("Applications under § 1782 routinely

proceed *ex parte*.").

Section 1782 specifically provides that the "order may prescribe the practice and

procedure" and goes on to say "[t]o the extent that the order does not prescribe otherwise, the

testimony or statement shall be taken, and the document or other thing produced, in accordance

with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a).

## II.      Iraq Telecom's Application Meets the Statutory Requirements of Section 1782

For the reasons discussed below, the Application meets each of the following statutory

requirements set forth in Section 1782:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal, including criminal
> investigations conducted before formal accusation. The order may be made…upon
> the application of any interested person and may direct that the testimony or
> statement be given, or the document or other thing be produced, before a person
> appointed by the court…. To the extent that the order does not prescribe otherwise,
> the testimony or statement shall be taken, and the document or other thing
> produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). Specifically, Section 1782 requires that the (1) person from whom discovery is sought resides in or is found in the district; (2) discovery is for use in a proceeding before a foreign tribunal, and (3) application is made by either a foreign tribunal or an interested party. *See Eni Ghana*, 2022 WL 3156224, at *3 (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

### A.    Lime Rock "Resides" or is "Found" in this District

The first requirement is satisfied when the recipient of the § 1782(a) subpoena "resides or is found" in the same district as the court considering the § 1782(a) application. *Id.* (citing 28 U.S.C. § 1782(a)). Here, the discovery is sought from Lime Rock, which is located in Houston, Texas at Heritage Plaza, Suite 4600, 1111 Bagby Street, 77002 and conducts business in Houston.[4] Further, the Lime Rock representatives that manage Lime Rock's relationship with OilServ are based in Houston. *See* Raedas Decl. at ¶ 13. Through its Houston office, Lime Rock conducts systematic and continuous local activities, including business relating to its investments in OilServ and thus, Lime Rock is found in the Southern District of Texas for purposes of Section 1782 and the first statutory requirement is satisfied. *See e.g.*, *Illumina Cambridge Ltd. v. Complete Genomics*, Inc., No. 19-MC-80215-WHO(TSH), 2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020) (finding foreign corporation to be "found in [] district" where it held itself out as having a facility in the district); *Shueisha Inc. v. Paypal Holdings, Inc.*, No. 22-MC-80273-JSC, 2023 WL 2277102, at *4 (N.D. Cal. Feb. 27, 2023) ("Applicants satisfy the § 1782(a) jurisdiction requirement. Witnesses' websites indicate an office within the Northern District of California[.]").

---

[4]    *Contact*, LIME ROCK PARTNERS, https://www.lrpartners.com/contact/ (last visited Jul. 13, 2023). In addition, Lime Rock Management LP's public registration forms state that Lime Rock Partners does business in Houston. Lime Rock, Form ADV, p. 4, https://reports.adviserinfo.sec.gov/reports/ADV/157127/PDF/157127.pdf (last visited Jul. 10, 2023). Also, Lime Rock's LinkedIn profile page lists Houston as its primary location. Lime Rock Partners, LinkedIn, https://www.linkedin.com/company/lime-rock-partners (last visited Jul. 13, 2023).

**B.      The Requested Discovery is "For Use" in a "Foreign Proceeding"**

**1.      The BVI Proceeding is a Foreign Proceeding**

The applicant must next demonstrate that the Requested Discovery is for use in a proceeding before a foreign tribunal.  The BVI courts are indisputably a "foreign tribunal" for purposes of Section 1782.  *See, e.g.*, *In re Ming Yang*, No. 19-mc-80207, 2019 WL 4054027, at *3 (N.D. Cal. Aug. 28, 2019) (granting Section 1782 application where evidence was requested for lawsuit in BVI); *In re Attorney General of British Virgin Islands*, No. 1:21-mc-00768, 2021 WL 5361073, at *1 (S.D.N.Y. Oct. 29, 2021) (finding that a proceeding pending in the BVI High Court was "a foreign proceeding within the meaning of 28 U.S.C. § 1782.").

Moreover, enforcement proceedings qualify as "foreign proceedings" of the kind that Section 1782 is designed to support.  *See In re NJSC Naftogaz of Ukraine*, 3-18-MC-92-L-BK, 2019 WL 13203773, at *2 (N.D. Tex. Sept. 30, 2019) (permitting discovery sought in connection with judicial proceedings to enforce an arbitration award in the Netherlands).  The BVI Proceeding is "adjudicative" because it seeks to determine "facts about the parties and their activities, businesses, and properties" such as "asset identification and ownership."  *In re Application of Lake Holding and Finance S.A.*, No 20-mc-62, 2021 WL 2581427, at *14 (S.D.N.Y. June 23, 2021) (cleaned up) (determining that bankruptcy proceedings in Cyprus were adjudicative and granting Section 1782 application to serve subpoenas on U.S. banks).

Specifically, as detailed *supra* in Section I, pages 7-8, in support of the BVI Proceeding, Iraq Telecom must identify the shares against which it seeks various charging orders and order for sale, and will need to provide sufficient evidence to the BVI court to establish, on the balance of probabilities, that the shares are indeed held on Mr. Barzani's behalf, how many such shares are held and by whom.  *See Lake Holding*, 2021 WL 2581427, at *15.  The BVI Court will assess this evidence and determine whether there is sufficient evidence that the PCO and charging order, if

granted, will correctly seize upon any asset that is truly owned by Mr. Barzani.  *See* Goldstein

Decl. at ¶ 15.  As the BVI Proceeding involves a factual issue that the BVI Commercial court must

determine, including by assessing evidence provided by Iraq Telecom, the BVI Proceeding

qualifies as a foreign proceeding under Section 1782.

### 2.    The Requested Discovery is "For Use" in a Foreign Proceeding

The requested Discovery is also "for use" in the BVI Proceeding.  As discussed *supra* in

Section I, pages 7-8, Iraq Telecom seeks evidence from Lime Rock regarding OilServ and its

shareholders, which will assist with the asset tracing and enforcement against Mr. Barzani of the

Award.  Iraq Telecom will also use the Requested Discovery to support its claim to the shares of

OilServ that Mr. Barzani (or his nominee) currently holds.  The Requested Discovery is for use in

the BVI Proceeding because it will help prove the merits of Iraq Telecom's enforcement claim.

Goldstein Decl. at ¶ 13.

### C.    Iraq Telecom is an "Interested Person"

Lastly, Iraq Telecom's status as the petitioner in the BVI Proceeding (*see* Goldstein Decl.

at ¶ 10) renders it an "interested person" in the foreign proceeding under Section 1782.  "No doubt

litigants are included among, and may be the most common example of, the interested person[s]

who may invoke [Section] 1782." *Intel*, 542 U.S. at 256 (internal quotations omitted).  Thus, the

third statutory requirement plainly is satisfied.

## III.   The Discretionary Factors Weigh in Favor of Iraq Telecom's Application

The discretionary factors set out by the Supreme Court in the seminal *Intel* decision also

strongly favor granting the Application.  These factors include: (1) whether "the person from

whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign

tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether

the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65; *see also In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*, 4:19-MC-2534, 2020 WL 13412872, at *2 (S.D. Tex. Apr. 13, 2020).

### A.    Lime Rock is not a Participant in the BVI Proceeding

The Supreme Court stated that "when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for [Section 1782] aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in a matter arising abroad."  *Intel*, 542 U.S. at 264.  Here, Lime Rock is neither a participant in the BVI Proceeding, nor an anticipated or intended party.  *See* Goldstein Decl. at ¶ 8.  As such, the first discretionary factor weighs in favor of granting the Application.

### B.    The BVI Courts are Receptive to Judicial Assistance

The BVI courts are receptive to relevant evidence gathered via the assistance of U.S. district courts.  *See* Goldstein Decl. at ¶¶ 19–20; *see also In re Ming Yang*, 2019 WL 4054027, at *3 ("Case law also suggests that BVI courts are generally receptive to discovery taken in the United States pursuant to Section 1782.");  *In re Attorney General of British Virgin Islands*, 2021 WL 5361073, at *1 (finding that "the BVI High Court is a foreign tribunal receptive to U.S. federal court assistance");  *In re Borrelli*, No. 20-mc-80154-JSC, 2020 WL 5642484, at *2 (N.D. Cal. Sept. 22, 2020) (finding there is "no evidence [] to indicate that the BVI Court would not make use of the discovery [the applicant] seeks" and noting that "[o]ther courts have found that British Virgin Island courts are receptive to federal court judicial assistance.").  Furthermore, there is no indication that the BVI Court would reject the evidence collected pursuant to Section 1782.  *See* Goldstein Decl. at ¶ 21.  Indeed, the BVI Commercial Court in the BVI Proceeding has accepted

and relied upon evidence obtained by way of other Section 1782 applications without issue. *See id*. at ¶ 19.

### C.    The Application Does Not Circumvent the Rules of the BVI Courts

The Application does not attempt to circumvent any rules or proof-gathering restrictions of the BVI courts. *See* Goldstein Decl. at ¶ 21. As discussed *supra*, U.S. courts have routinely granted such discovery to support proceedings in BVI courts. Moreover, U.S. courts have accepted that BVI public policy supports the collection of Section 1782 discovery and that the materials are permitted into evidence once shown that they are relevant to the proceeding. *See In re Ming Yang*, 2019 WL 4054027, at *3. Lastly, as noted *supra*, the BVI Commercial Court in the BVI Proceeding has already accepted and relied upon evidence obtained by way of other Section 1782 applications without issue. *See* Goldstein Decl. at ¶ 19. Thus, the third discretionary factor also weighs in favor of granting discovery. *See Intel*, 542 U.S. at 264-65.

### D.    The Application is Narrowly Tailored to Avoid Unnecessary Burdens in Accordance with the Federal Rules Of Civil Procedure

Finally, the fourth factor favors granting discovery because the Application is narrowly tailored to include only relevant and easily identifiable information and documents, and avoids any undue burden on Lime Rock. *See supra* at 7-8; Tahler Decl. at Exs. 2–3.

First, Section 1782 incorporates the Federal Rules of Civil Procedure. *Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012) ("[T]he Federal Rules of Civil Procedure governed the underlying discovery requests once the district court granted [the party's] Section 1782 application."); *see also Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir. 2009) ("Given that § 1782(a) directs judges to provide discovery assistance pursuant to the Federal Rules of Civil Procedure, the district court was well within its discretion to order discovery pursuant to the Federal Rules of Civil Procedure in this case."). As described above, the Requested Discovery

directly bears upon the allegations in the BVI Proceeding.  As such, the Requested Discovery is highly relevant to the BVI Proceeding.

Second, the Requested Discovery, which consists of only ten narrow document requests to Lime Rock, would not be unduly burdensome for Lime Rock to produce, as the requests are targeted in scope and are of the type regularly maintained by and easily accessible to Lime Rock. Specifically, Iraq Telecom seeks information relating to only one of Lime Rock's investments, OilServ, for a specified period of time (*i.e.*, January 1, 2010 to the present).  Further, Iraq Telecom seeks documents and information relating to Lime Rock's due diligence file, and testimony from the person at Lime Rock most knowledgeable about the investment and OilServ's shareholders' investments ever since.  Because the Requested Discovery (1) seeks material documents and information; (2) is limited by scope and date; (3) is maintained or accessible in the normal course of business by Lime Rock; and (4) is sufficiently specific to allow Lime Rock to identify and produce the documents and information with minimal burden, *see supra* at 8-9; Tahler Decl. at Exs. 2-3, the Application comports with the Federal Rules of Civil Procedure and should be granted.

## IV.    CONCLUSION

Based on the foregoing, Iraq Telecom respectfully requests the Court to issue an Order granting the Application and authorizing the Applicant to serve Lime Rock with the subpoenas attached as Exhibits 2 and 3 to the Tahler Declaration and directing Lime Rock to produce the Requested Discovery in its possession, custody and control.

Dated:  July 25, 2023                          By: */s/Christopher Porter*_____

Christopher Porter
Quinn Emanuel Urquhart & Sullivan LLP
Pennzoil Place
711 Louisiana St., Suite 500
Houston, TX 77002
Tel: (713) 221-7000
chrisporter@quinnemanuel.com

Kristin Tahler (*pro hac vice* to be submitted)
Quinn Emanuel Urquhart & Sullivan LLP
865 S Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
kristintahler@quinnemanuel.com

Katy Akopjan (*pro hac vice* to be submitted)
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
katyakopjan@quinnemanuel.com

Laura N. Ferguson (*pro hac vice* to be
submitted)
Quinn Emanuel Urquhart & Sullivan LLP
2601 S. Bayshore Dr. Ste 1550
Miami, FL 33133
Tel: (305) 402-4880
lauraferguson@quinnemanuel.com

*Counsel for Applicant Iraq Telecom, Ltd.*

17